**STATE**

v.

**Gary JOHN.**

No. 2003–332–CA.

Supreme Court of Rhode Island.

Sept. 16, 2005.

Jane M. McSoley, Providence, for Plaintiff.

Robert B. Mann, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

1. We are advised that Mr. John was at one time a Special Agent assigned to the Boston office of the Federal Bureau of Investigation.

## OPINION

**PER CURIAM.**

This case came before the Supreme Court for oral argument on March 1, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be summarily decided.

### Facts and Travel

The defendant, Gary John,[1] had been married to Deborah John for twenty years before Deborah initiated divorce proceedings in August of 2001. At that time she obtained a no-contact order against defendant (dated August 20, 2001) from the District Court pursuant to G.L.1956 § 12–29–4. A subsequent no-contact order was issued on September 23, 2001.

On February 27, 2002, defendant pleaded *nolo contendere* to charges of domestic disorderly conduct and violation of the August 20, 2001 no-contact order. On the date of defendant's nolo plea, the District Court issued yet another no-contact order. The defendant met with his probation officer the next day, at which time they discussed the terms and conditions of the no-contact order.

Shortly after the February 27, 2002 no-contact order was issued, defendant mailed Deborah John two birthday cards—one postmarked March 12, 2002 and the other March 13, 2002. Each of the cards contained brief messages handwritten by defendant.[2] After receiving the

2. The first card was inscribed with the words: "Happy B-day!" The second card was inscribed with the words: "You may be fifty, but only in age. You look 39!"

cards, Deborah John contacted her local police department in Charlestown, and defendant was arrested and charged with two counts of violating the February 27, 2002 no-contact order.

On the basis of the fact that he had pleaded *nolo contendere* on February 27 of that year to (1) a charge of domestic disorderly conduct and (2) a charge of violating a no-contact order, defendant was charged with a felony pursuant to § 12–29–5.[3]

The defendant was tried before a jury on September 24 and 25, 2002. During the trial, Deborah John testified (over defendant's objection) that defendant had contacted her on a number of occasions between August 20, 2001 and February 2002. According to Deborah John's testimony, on October 4, 2001, defendant had gone to her place of work in order to discuss some of their differences, and an argument occurred. Later, on October 13, 2001, defendant went to Deborah John's home for the purpose of picking up their son.[4] When Deborah John told defendant that their son did not want to go with him, an argument ensued, and she asked defendant to leave the premises. From November 2001 until February 2002, defendant telephoned Deborah John several times a week, and he once approached her at a family wedding in Virginia. The prosecution also introduced (over defendant's objection) the existence of the two previous no-contact orders (dated August 20, 2001 and September 23, 2001) which the District Court had issued against defendant.

At the close of the prosecution's case, defendant moved for judgment of acquittal, which motion the trial justice denied. After the trial justice charged the jury, defendant's counsel objected to the justice's failure to include two instructions that he had proposed, which objection the trial justice overruled.

The jury returned guilty verdicts on both counts; and, as a result, defendant was convicted of a felony pursuant to § 12–29–5. The defendant was sentenced to two concurrent ten-year terms, with the first fifteen months to be served; the remaining time on each count was suspended with probation. The defendant timely appealed.

On appeal, defendant argues that the trial justice erred in several respects. First, defendant asserts that the trial justice erred in finding that he was a third-time offender who thus fell within the ambit of § 12–29–5. Second, defendant argues that the trial justice erred in denying defendant's Super. R.Crim. P. 29 motion for judgment of acquittal, which motion defendant made at the close of the prosecution's case. Third, he asserts that the trial justice acted erroneously in light of Rule 404(b) and Rule 403 of the Rhode Island Rules of Evidence when he admitted evidence of three prior incidents of interaction between defendant and Deborah John in violation of previously issued no-contact orders.[5] The defendant further

---

3. General Laws 1956 § 12–29–5(c)(1) reads in pertinent part:

"Every person convicted of an offense punishable as a misdemeanor involving domestic violence as defined in § 12–29–2 shall:

\* \* \*

(ii) For a third and subsequent violation be deemed guilty of a felony and be imprisoned for a term of not less than one year and not more than ten (10) years."

4. During their marriage, Gary and Deborah John had two children, a son and a daughter.

5. The specific incidents at issue were (1) the above-referenced argument between defendant and Deborah John on October 4, 2002; (2) the additional above-referenced argument between the same persons on October 13, 2004; and (3) various telephone calls made by defendant to Deborah John between November 2001 and February 2002.

alleges that the trial justice erred in light of Rule 404(b) and Rule 403 when he admitted the actual prior no-contact orders which prohibited defendant from contacting Deborah John. Finally, defendant argues that the trial justice's instructions to the jury were insufficient because they did not comport with the criteria endorsed by this Court in *Sunbeam Corp. v. Ross–Simons, Inc.*, 86 R.I. 189, 134 A.2d 160 (1957) or with our law as to the type of notice to which defendant was entitled.

## Analysis

### I. The Effect of *State v. Martini*

▇▇▇ Pursuant to our recent decision in *State v. Martini*, 860 A.2d 689 (R.I. 2004), it is clear that defendant's felony conviction under § 12–29–5 must be vacated, and a sentence should be imposed in accordance with the jury's finding of guilt on the two lesser-included misdemeanor counts of violating the February 27, 2002 no-contact order.[6]

In *Martini*, this Court noted that the crime of disorderly conduct is statutorily classified as a *petty misdemeanor* (as distinguished from a misdemeanor) under Rhode Island law (G.L.1956 § 11–45–1) and then proceeded to hold that a conviction for disorderly conduct is not subject to the enhancement provisions contained in § 12–29–5 (the Domestic Violence Prevention Act). *Martini*, 860 A.2d at 692.

The defendant's sentence in this case was based on a finding that he was a third-time offender for purposes of the provisions of § 12–29–5. One of the previous

offenses that supported this finding was his plea of *nolo contendere* on February 27, 2002, to a charge of domestic disorderly conduct. In view of our holding in *Martini*, however, defendant's conviction for domestic disorderly conduct cannot be a basis for subjecting him to a felony conviction pursuant to § 12–29–5. Therefore, the conviction must be vacated, and the case must be remanded for entry of judgments of conviction for the lesser included misdemeanor offenses of twice violating the February 27, 2002 no-contact order.

### II. The Denial of the Motion for Judgment of Acquittal

▇▇▇ The defendant further alleges that the trial justice erred in denying his motion for judgment of acquittal. In his motion defendant argued that the criminal information under which he was charged referred only to the February 27, 2002 no-contact order whereas he claimed to have had no notice of that particular no-contact order.[7]

The defendant also argued that the February 27, 2002 no-contact order did not specifically proscribe mailings and, further, that no evidence had been presented to show that Deborah John had read the birthday cards or was harassed by them. The trial court denied defendant's motion for judgment of acquittal, ruling that there was evidence that defendant had received adequate notice of the February 27, 2002 no-contact order from his probation officer and that the order was broad enough to

---

6. Our recent decision in *State v. Martini*, 860 A.2d 689 (R.I.2004), constitutes a new rule of law. As such, it may be invoked by a party such as the present appellant whose appeal is pending. *Pailin v. Vose*, 603 A.2d 738, 741–42 (R.I.1992); *see Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

7. To support his contention that he had no notice of the February 27, 2002 no-contact order, defendant points to the fact that he had not signed that order, whereas he had signed previous no-contact orders directed to him.

include mailings. The trial court further noted that Deborah John had testified that she recognized defendant's handwriting, and it found that the sending of the cards could constitute a subtle form of harassment.

We have stated that "[i]n reviewing a claim of legal sufficiency of the evidence in the context of a motion for a judgment of acquittal, this Court applies the same standard as that applied by the trial court, namely, '[we] must view the evidence in the light most favorable to the state, * * * giving full credibility to the states witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Otero,* 788 A.2d 469, 475 (R.I.2002) (quoting *State v. Snow,* 670 A.2d 239, 243 (R.I. 1996)).

The defendant's contention that the sending of two birthday cards did not actually violate the no-contact order is, in our judgment, not a frivolous argument, and it is one that we have considered seriously. In the end, however, we have concluded that the trial justice did not err in finding that sufficient evidence existed to establish that the order prohibited such conduct.[8]

We fully appreciate (and we do not retreat from) the principle that due process requires that there be reasonable clarity and specificity in court orders. *See, e.g., State v. Eckert,* 120 R.I. 560, 567, 389 A.2d 1234 (1978) ("The general rule is that to be enforceable by a contempt proceeding, an injunction must be clear and certain, and its terms must be sufficiently detailed to enable one reading the injunctive order to understand therefrom what he may not do thereunder."); *Sunbeam Corp.,* 86 R.I. at 194, 134 A.2d at 162–63 ("The terms of the order should be specific, clear and precise so that one need not resort to inference or implications to ascertain his duty or obligation thereunder. * * * As the respondent must obey the order at his peril it should be clear, definite and explicit so that an unlearned man can understand its meaning."); *see also Biron v. Falardeau,* 798 A.2d 379, 382 (R.I.2002); *Ventures Management Co. v. Geruso,* 434 A.2d 252, 254 (R.I.1981).

Nevertheless, having carefully considered the no-contact order in light of the requirement that such orders be reasonably clear and specific, we conclude that there was no violation of that important principle in this case. In the pellucid language of the no-contact order,[9] the defendant was expressly "enjoined and restrained from *any contact* with the alleged victim * * *." (Emphasis added.) The words "any contact" in the order are as unequivocal as they are broad. It is clear to us that defendant's sending of the cards constituted contact with Deborah John, and therefore the trial justice did not err by concluding that the prosecution had put forth sufficient evidence for the jury to find that defendant had violated the no-contact order of February 27, 2002.[10]

---

**8.** We have already noted the fact that Deborah John actually received the two cards at issue. Nothing further was required for there to be "contact."

Webster's New World College Dictionary 313 (4th ed. 2002) defines the noun "contact" as "the state or fact of being in touch, communication or association * * *."

That definition strikes us as being sound, and it is our view that the defendant's sending of the cards constituted "the state * * * of being in touch, communication or associa-

tion" with Mrs. John, in spite of her non-reciprocation. (We know of no requirement that there must be a dialog for there to be contact. Such a requirement would render purposeless most no-contact orders.)

**9.** A copy of the February 27, 2002 no-contact order is appended to this opinion.

**10.** There is a degree of deliberateness about the sending of a card that distinguishes this case from the situation in *State v. Conti,* 672

We are further of the view that, given the plain language of the order, the prosecution did not need to present evidence showing that defendant's conduct actually harassed Deborah John in order to prove that defendant violated the no-contact order. The order states that "[t]he defendant is hereby enjoined and restrained from any contact with the alleged victim Deborah John; *further*, the defendant shall not harass, interfere with, molest or threaten the victim in any manner." (Emphasis added.) Under the terms of the order, therefore, defendant could be found to have violated the order if the prosecution proved "any contact" of Deborah John initiated by defendant *or* if the prosecution proved that defendant did "harass, interfere with, molest or threaten the victim in any manner."

After viewing the evidence in the light most favorable to the state, which is the standard of review that applies in this context, we conclude that the prosecution presented sufficient evidence of "contact" such that the denial of defendant's motion for judgment of acquittal was not error regardless of whether the prosecution presented evidence that defendant's conduct in fact harassed Deborah John.

### III. The Admissibility of Earlier Violations and the Prior No–Contact Orders

■ The defendant also argues that the trial justice erred in allowing the prosecution to present evidence that defendant had violated previous no-contact orders. According to defendant, the introduction of that evidence should have been barred by Rule 404(b) of the Rhode Island Rules of Evidence.[11] We disagree.

■ We are quite aware of (and respectful of) the prohibition against using evidence of prior wrongs to show the defendant's propensity to commit the crime with which he is currently charged. *See, e.g., State v. Woodson*, 551 A.2d 1187, 1193 (R.I.1988); *see also State v. Stewart*, 663 A.2d 912, 922 (R.I.1995); *State v. Lemon*, 497 A.2d 713, 720 (R.I.1985). At the same time, we are equally aware of the principle that "[e]vidence of other conduct, even of a criminal nature, may be received if it is interwoven with the current charge in a way that tends to establish 'guilty knowledge, intent, motive, design, plan, scheme, system, or the like.'" *Woodson*, 551 A.2d at 1193; *State v. Powell*, 533 A.2d 530, 531 (R.I.1987); *Lemon*, 497 A.2d at 720.

The seminal case of *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935), is very clear as to both the basic rule and the exceptions to it:

"While it is the rule that in the trial of a criminal offense evidence of other and distinct criminal acts is generally prejudicial and inadmissible, yet it is generally conceded that evidence of other acts, representations, and conduct at different times, even of a criminal nature, may be received when they are interwoven with the offense for which the defendant is being tried, or directly support a finding

A.2d 885, 887 (R.I.1996) ("In the present case there is no indication in the record to show that each incident complained of was more than coincidence.").

11. With respect to R.I. R. Ev. 404(b) rulings, we continue to adhere to the deferential appellate stance that we summarized as follows in *State v. Breen*, 767 A.2d 50 (R.I.2001):

"The decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice, and 'on appeal we shall only disturb his or her decision when it constitutes an abuse of discretion,' * * * and the evidence was 'both prejudicial and irrelevant.'" *Id.* at 58 (quoting *State v. Gabriau*, 696 A.2d 290, 294 (R.I.1997) and *State v. Martinez*, 651 A.2d 1189, 1194 (R.I.1994)).

of guilty knowledge in the perpetration of that offense. Any circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority." *Id.* at 173–74, 179 A. at 149.

The earlier wrongs at issue here were certainly of the same generic type as the crime with which defendant was charged in this instance.[12] Although evidence of those earlier wrongs could fall within any one of several exceptions to the prohibitory language of Rule 404(b), in our judgment the exception for "intent" is the most clearly applicable. The evidence of defendant's violation of earlier no-contact orders tended to prove that defendant had the requisite intent with respect to his alleged violation of the February 27, 2002 no-contact order.[13] *See, e.g., United States v. Espinoza,* 578 F.2d 224, 228 (9th Cir.1978) (upholding the admission of evidence of defendant's similar previous bad acts when the purpose was to show "the knowledge and intent" of the defendant); *see also United States v. Queen,* 132 F.3d 991, 997 (4th Cir.1997) ("[T]he high degree of similarity between the prior acts and the act with which [defendant] was charged supports the finding that the acts were relevant to intent."); *United States v. Fitterer,* 710 F.2d 1328, 1332 (8th Cir.1983) (upholding the admission of evidence under Fed. R.Ev. 404(b) where the purpose was to show the defendant's intent); *United States v. Cardillo,* 708 F.2d 29, 30 (1st Cir.1983) (same). It is our opinion that the trial justice did not abuse his discretion in admitting this evidence. *See State v. Lynch,* 854 A.2d 1022, 1040 (R.I.2004).

■ The defendant further argues, however, that the admission of the actual prior no-contact orders themselves violated Rule 404(b). Again, it is our opinion that the trial justice did not abuse his discretion in admitting this evidence. The introduction of the no-contact orders was integrally related to Deborah Johns testimony that defendant had on previous occasions contacted her in violation of prior court orders then in effect.

■ The defendant also argues that all of the above evidence was introduced in violation of Rule 403.[14] Rule 403 provides that "[relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ It is within the sound discretion of the trial justice whether to admit or exclude evidence under Rule 403. *State v. Martinez,* 824 A.2d 443, 449 (R.I.2003); *State v. Grundy,* 582 A.2d 1166, 1172 (R.I. 1990). We review the trial justice's decision for clear abuse of discretion, and we

---

12. It is also important to bear in mind that each of the incidents of prior misconduct that came into evidence involved *the same person,* namely Deborah John.

13. The evidence of the earlier violations also tends to show that the violation of the February 27, 2002 no-contact order was not the product of an innocent mistake. *See* Rule 404(b) (listing "proof of * * * absence of mistake" as one of the exceptions to the rule);

*State v. Lamoureux,* 623 A.2d 9, 12–13 (R.I. 1993) (discussing this portion of the rule).

14. In addition to the protections afforded by Rule 403, we have required that, in applying Rule 404(b), "the trial justice must carefully weigh the probative value of the evidence against the danger of unfair prejudice * * *." *State v. Pratt,* 641 A.2d 732, 742 (R.I.1994). We are convinced that such weighing was properly accomplished in this case.

reverse such decisions only when there has been a clear abuse of discretion. *State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995); *State v. Ducharme*, 601 A.2d 937, 942 (R.I. 1991); *Cuddy v. Schiavonne*, 568 A.2d 1387, 1389 (R.I.1990).

Here, the trial justice admitted the evidence with a proper 404(b) limiting instruction,[14] which mitigated against the probative value of the no-contact orders being outweighed by the factors listed in Rule 403. *See State v. O'Brien*, 774 A.2d 89, 107 (R.I.2001) (applying earlier holding that evidence is not to be excluded under Rule 403 unless it is of " 'limited or marginal relevance and [is] *enormously* prejudicial' ") (emphasis added); *State v. Pratt*, 641 A.2d 732, 741 (R.I.1994) (holding that "the slight prejudicial effect" of the challenged evidence in that case "was outweighed by the probative value * * *."). We perceive no abuse of discretion in the trial justice's decision to overrule defendant's objection to this evidence on Rule 403 grounds.

## IV. The Sufficiency of the Jury Instructions

Finally, defendant contends (1) that the trial justice erred when he failed to include among his instructions to the jury two of defendant's proposed instructions and (2) that, as a result, the instructions given by the trial justice were insufficient. The first of the defendant's two proposed instructions reads as follows: "The defendant Gary John may not be punished for disobedience of an order which is capable after construction consistent with innocence." The second proposed instruction would have told the jury that, to convict defendant, it must find that "[t]he order was served upon the defendant or [that] the defendant was otherwise provided a copy of the no-contact order prior to the date in which he allegedly sent the birthday cards."

As to the first of defendant's proposed instructions, the trial justice found that his jury charge had adequately covered the substance of defendant's proposed instruction—albeit in what the justice considered to be more understandable English than that proposed by defendant.

As to the second proposed instruction, the trial justice found that such an instruction did not reflect with sufficient precision the law that applies to this case; instead, the justice ruled that there would be a sufficient basis to convict if the jury were to find that defendant was aware of the contents of the court order—regardless of

---

**14.** The following clear and cogent mid-trial instruction by the trial justice deserves extensive quotation:

"[L]adies and gentlemen, I feel compelled to again admonish you with respect to certain evidence that you've heard. I gave you an instruction earlier today concerning the very limited use you could make of certain evidence, and I'm going to give you another one of those instructions now.

"When you came to court, you probably thought that you would hear evidence and see exhibits and you could use that evidence for whatever purpose you might want to, but that's not * * * the case. With respect to certain testimony you've just heard from this particular witness as well as exhibits four, five, and six, that is no contact orders which were purportedly issued on dates other than February 27, 2002, you may find that this evidence relates to conduct of the defendant which could be characterized as misconduct. Bear in mind again that such evidence, the testimony as well as these exhibits, 4, 5, and 6 cannot be used by you to judge the character of this defendant. Any of this evidence to which I've just alluded, to the extent that you decide to consider it at all is admitted only for the limited purpose as it may in your minds relate to this defendant's motive, opportunity, intent, preparation, plan or knowledge with respect to the two offenses for which he is presently on trial."

whether he actually received a copy of the order itself.

The trial justice charged the jury in part as follows:

"There are three essential elements to the offenses charged, each of which the State must prove beyond a reasonable doubt. First, at the time of the offense charged, there must have been a no contact order in effect. Second, the defendant was aware of the [restrictions [15]] on his behavior by reason of the no contact order; third, the defendant willfully disobeyed the restrictions of the no contact order.

"When a no contact order is issued by a court, the defendant is enjoined and restrained from having any contact with the alleged victim. The defendant is further ordered not to harass, interfere with, molest, or threaten the victim in any manner. However, a no contact order must be clear, definite and explicit so that the unlearned person can understand its meaning. The defendant may not be convicted for disobedience of a no contact order, the terms of which are not capable of being readily understood."

■ Our standard of review for jury instructions is well settled. *State v. Hurteau*, 810 A.2d 222, 224 (R.I.2002). In reviewing instructions, it is our role to " 'examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them,' * * * and we review challenged portions of jury instructions in the context in which they were rendered."

*Hurteau*, 810 A.2d at 225 (quoting *State v. Krushnowski*, 773 A.2d 243, 246 (R.I. 2001)); *see also State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986).

■ The defendant contends that the trial justices instructions were insufficient because, in his view, they failed to comport with our decision in *Sunbeam Corp.*[16] In light of what we have said in Part II of this opinion, it necessarily follows that the trial justice did not err by declining to give defendant's first proposed instruction verbatim. We agree with the trial justice that the first contested instruction in this case adequately stated the pertinent law and indeed did so in a language that we find more readily understandable than that contained in the proposed instruction.

■ As for defendant's second objection to the instructions, he asserts that the trial justice misstated the law when he instructed the jury that it need only find that defendant "was *aware of* the [restrictions] on his behavior by reason of the no contact order." (Emphasis added.) According to defendant, the prosecution was required to prove that "the order was served upon the defendant or the defendant was otherwise provided a copy of the no contact order prior to the date in which he allegedly sent the birthday cards."

We have carefully reviewed § 12–29–4, which deals with the issuance by courts of no-contact orders prohibiting a defendant who has been arrested for or charged with a crime of domestic violence from having contact with the victim. Such no-contact orders must be issued before such a defendant is released from custody, and they

---

15. The word "reinstructions" appears in the trial transcript at this point. This is undoubtedly a typographical error. We have inferred from the context that the correct word should be "restrictions."

16. The defendant points particularly to the following sentence in *Sunbeam Corp. v. Ross-Simons, Inc.*, 86 R.I. 189, 194, 134 A.2d 160, 162 (1957): "The party enjoined should not be punished for disobedience of an order which is capable of a construction consistent with innocence."

also may be issued upon the disposition of a case involving a domestic violence crime. Section 12–29–4(a)(3) contains the following requirements regarding the contents of no-contact orders:

> "[T]he written [no-contact] order issued at the time of disposition shall contain the court's directive and shall bear the legend: 'Violation of this order is a criminal offense under this section and will subject a violator to arrest.' A copy of the order shall be provided to the victim."

 The statute contains no requirement that such an order must be served upon the defendant or that the defendant must be provided with a copy of the order. We recognize, of course, that due process requires that a defendant be made aware of the order and of the restrictions upon his behavior directed by that order.[17] In this instance, the trial justices instruction adequately covered the law by informing the members of the jury that they must find that defendant "was *aware of* the restriction on his behavior by reason of the no-contact order." (Emphasis added.) We perceive no error in this instruction.

## Conclusion

The Criminal Information setting forth the charges stemming from the March 13 and March 14 actions by defendant (viz., his mailing of the birthday cards on those dates) is divided into two counts (each relating to one of the mailings). Each count contains the notation that defendant "was previously convicted of domestic disorderly conduct * * * and of violation of a no contact order * * *."

However, once the domestic disorderly conduct conviction is removed from consideration as a predicate offense necessary to establish a felony (as is required by this Court's ruling in *Martini*), the result is that, at the time of the trial on the counts that are the subject of this appeal, only one previous conviction was properly before the court—viz., the February 27, 2002 violation of a no-contact order.

Consequently, there should have been no felony enhancement pursuant to § 12–29–5, and the defendant stands convicted of the lesser-included misdemeanor counts of violating the February 27, 2002 no-contact order.

For the foregoing reasons, the defendant's felony convictions for violation of the February 27, 2002 no-contact order are vacated, and we remand this case to the Superior Court with directions to enter corrected judgments and to resentence defendant with respect to the two misdemeanor offenses of violating a no-contact order. The record may be returned to the Superior Court.

---

**17.** In our recent decision in *In re Court Order Dated October 22, 2003*, No.2003–613–M.P., slip op. at 10 (R.I. filed July 19, 2005) we quoted with approval the following statement of certain basic principles by the First Circuit:

> "A corollary of the requirement that orders enforceable through the contempt power be clear and unambiguous is that those who would suffer penalties for disobedience must be aware not merely of an order's existence, but also of the fact that the order is directed at them. This tenet has not been stated frequently. Withal, the relative rarity of articulation testifies more to the sheer obviousness of the principle * * *. [*Project B.A.S.I.C. v.*] *Kemp*, 947 F.2d [11,] 17 [(1st Cir.1991)]."

**APPENDIX**

 STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS DOB 10/8/48 NO-CONTACT ORDER DISTRICT COURT

| COMPLAINT NO. | DEFENDANT | DIVISION |
|---|---|---|
| 2002-447 | | 4th |

THE ABOVE-NAMED DEFENDANT APPEARED BEFORE THE DISTRICT COURT IN THE ABOVE-ENTITLED MATTER INVOLVING A DOMESTIC VIOLENCE CRIME. THE DEFENDANT IS HEREBY ENJOINED AND RESTRAINED FROM ANY CONTACT WITH THE ALLEGED VICTIM. _____; FURTHER, THE DEFENDANT SHALL NOT HARASS, INTERFERE WITH, MOLEST OR THREATEN THE VICTIM IN ANY MANNER. THIS ORDER IS IN EFFECT UNTIL FURTHER ORDER OF THE COURT OR UNTIL THE CASE IS TERMINATED.

A VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE UNDER R.I.G.L. § 12-29-4 AND WILL SUBJECT A VIOLATOR TO ARREST. OR, IT MAY CONSTITUTE A VIOLATION OF PROBATION OR CONTEMPT. A PERSON SUBJECT TO THIS ORDER WHO POSSESSES, TRANSPORTS, OR RECEIVES ANY FIREARMS OR AMMUNITION MAY BE SUBJECT TO FEDERAL PROSECUTION UNDER 18 U.S.C. § 922(G)(8), PUNISHABLE BY UP TO TEN YEARS IN PRISON.

| DATE | JUDGE/JUSTICE OF THE PEACE | POLICE DEPT. |
|---|---|---|
| 2/27/02 | | State HV |

A True Attest

_____
Clerk/Deputy Clerk