**STATE**

**v.**

**Jose Luis VARGAS.**

**No. 2009–82–CA.**

Supreme Court of Rhode Island.

April 22, 2010.

---

Virginia M. McGinn, Department of Attorney General, for Plaintiff.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on appeal by the defendant, Jose Luis Vargas (Vargas or defendant), after a jury convicted him of multiple counts of child molestation. The defendant presents three arguments on appeal. He contends that: (1) the trial justice erred by allowing the state to use his prior criminal convictions for impeachment purposes, should

the defendant have testified at trial; (2) the trial justice erred by permitting cross-examination of the complainant's grandmother about the defendant's sexual relationship with her then-minor daughter; and (3) the trial justice erred by failing to adequately inform the jury about the factual distinctions between counts 5 and 6 of the indictment, each of which charged the defendant with second-degree child molestation sexual assault. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

In June 2002, defendant was indicted by a Providence County grand jury for two counts of first-degree child molestation sexual assault, in violation of G.L. 1956 § 11–37–8.1 [1] and four counts of second-degree child molestation sexual assault, in violation of § 11–37–8.3,[2] stemming from allegations made by his former girlfriend Eve's daughter, Debra.[3] A trial was held in the Providence Superior Court in January 2004.

The state presented two witnesses. Debra, who was seventeen years old at the time of trial, testified that when she was six years old, defendant molested her on four separate occasions. The first incident occurred while Debra was watching television in her living room. Debra testified that defendant came into the room and "just sat next to me and started rubbing my chest on top of my clothes[,]" and told her "not to worry, that it's nothing bad." Approximately one month later, the second

episode, consisting of two counts of first-degree molestation and one count of second-degree molestation occurred when she was alone in the apartment with defendant. The defendant took Debra into Eve's bedroom; he sat her on the bed, felt her chest underneath her shirt, engaged in cunnilingus, forced the child to perform fellatio, and attempted to engage in anal sex. Debra testified that she began to cry and attempted to flee the room, but defendant stopped her. The defendant also told Debra that if she told anyone, he would injure her mother, Eve.

Nonetheless, Debra testified that after this second incident, she told her grandmother, Estelle, who in turn assured Debra that she would handle it. However, Estelle did nothing, and defendant molested Debra two additional times. Several weeks after the second episode, Vargas ordered Debra into the bathroom, and forced her to "grab his penis and move [her] hand up and down slowly[,]" which she did until defendant ejaculated. The final incident occurred a few weeks later when defendant followed Debra into the bathroom and made her perform the same act. She testified that defendant again threatened to hurt Eve if Debra told anyone.

Years later, when she was fifteen years old, Debra finally told Eve about the molestation. According to Debra, Estelle and Eve had gone shopping for Christmas presents, and Debra was baby-sitting her cousin Charlie (who was defendant's son

---

**1.** General Laws 1956 § 11–37–8.1 provides: "A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."

**2.** Section 11–37–8.3 provides: "A person is guilty of a second degree child molestation sexual assault if he or she en-

gages in sexual contact with another person fourteen (14) years of age or under."

**3.** Because the victim was a minor when the molestations occurred, we shall use a pseudonym to protect her privacy. We shall also use pseudonyms for all family members involved in this case.

with Eve's younger sister, Darcy).[4] Debra testified that while she was baby-sitting Charlie, she realized how much he resembled Vargas, and this caused her to recall the incidents of molestation. A few days later, Debra told Eve about the assaults.

Eve testified for the prosecution and stated that she and Vargas had dated for two years, beginning around 1992, and that she and Debra had lived with defendant for approximately one year. According to Eve, when she heard that Vargas also was involved with two of her sisters, Ellen and Darcy, the relationship ended. Eve described how Debra initially denied that anything was wrong, but after Eve repeatedly asked her whether anything happened, "[Debra] told me that he raped her. That Jose Vargas raped her." Eve said that she arranged for counseling and contacted the Providence Police Department. Eve also testified that she no longer had a relationship with her mother, Estelle, because Estelle knew about the allegations and had done nothing to protect Debra.

On the other hand, Estelle testified on behalf of defendant. She stated that she had a difficult relationship with Eve and that it further deteriorated when these events came to light. According to Estelle, Eve was seeking revenge against Vargas, and she (Estelle) believed that the molestation allegations were false because, she declared, Debra would say whatever Eve told her to say.[5] Estelle denied that Debra had confided in her and declared that "of course" she would have intervened if she had been aware of these allegations. However, on cross-examination, Estelle admitted that she did not notify the police when Vargas was having a sexual relationship with her own daughter, who, at the time, was a young teenager.

Darcy also testified for the defense. She described how at fifteen years old, she gave birth to defendant's son, Charlie. She testified that although she did not begin dating Vargas until after he and Eve separated, Eve was "very angry and jealous" about the relationship and wanted revenge.

After two hours of deliberations, the jury found defendant guilty of all six counts. He was sentenced to fifty years at the Adult Correctional Institutions, with thirty-five years to serve, fifteen years suspended, and fifteen years with probation on the first-degree molestation counts, and concurrent terms of ten years to serve on each of the second-degree molestation counts.[6] This timely appeal followed.

---

4. According to the testimony in this case, it is alleged that Vargas had sexual relationships with essentially all parties involved. Debra testified that Vargas started dating Darcy when she was only fourteen years old. Eve later testified that Vargas had sexual relationships with her sisters, Ellen and Darcy. Ellen, who testified for the defense, denied having a relationship with Vargas, but described how Eve accused their mother, Estelle, also of having a sexual relationship with Vargas. Estelle denied this, but admitted that she knew Vargas was having a relationship with her daughter, Darcy, when she was a minor. Darcy testified that she had a sexual relationship with Vargas, but only after he ended his relationship with her sister, Eve.

5. Additionally, Estelle disclosed that Eve had made a prior false allegation when she accused another former boyfriend of raping Debra.

6. In the same indictment, the grand jury also charged defendant with one count of first-degree child molestation, and three counts of second-degree child molestation, of another (but unrelated) child. Vargas eventually pled *nolo contendere* to four charges of second-degree child molestation and was sentenced on each count to ten years at the Adult Correctional Institutions, fourteen months to serve, the remainder suspended, with probation, all concurrent.

## Standard of Review

■ "It is well settled in this jurisdiction that the trial justice has broad discretion in deciding whether or not to admit evidence of prior convictions under Rule 609." *State v. Silvia*, 898 A.2d 707, 718 (R.I.2006) (citing *State v. Werner*, 831 A.2d 183, 204 (R.I.2003)). Additionally, this Court accords great "latitude to a trial justice's rulings made during examination of witnesses at trial." *State v. Gomez*, 848 A.2d 221, 237 (R.I.2004). This Court will reverse evidentiary decisions made by a trial justice only if we determine that there was an abuse of discretion. *Id.* Finally, when this Court reviews issues pertaining to jury instructions, we do so *de novo*. *State v. Imbruglia*, 913 A.2d 1022, 1031 (R.I.2007).

## Analysis

## I

### Motion to Exclude Evidence of Defendant's Prior Convictions

■ The defendant's first contention on appeal is that the trial justice erred in denying defendant's pretrial motion *in limine*, in which, based on Rule 609 of the Rhode Island Rules of Evidence,[7] Vargas sought to preclude the state from introducing his prior convictions if he testified in his defense.[8] Vargas contends that the state should have been barred from using his prior convictions because the prejudicial effect of this evidence substantially outweighed any probative value, and further, Vargas argues, the convictions were too remote in time.[9]

Rule 609 provides that evidence of a prior criminal conviction is inadmissible for impeachment purposes if the trial justice determines that the prejudicial effect of the conviction *substantially* outweighs its

7. Rule 609 of the Rhode Island Rules of Evidence provides in pertinent part:

"(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record. 'Convicted of a crime' includes (1) pleas of guilty, (2) pleas of nolo contendere followed by a sentence (i.e. fine or imprisonment), whether or not suspended and (3) adjudications of guilt.

(b) *Discretion.* Evidence of a conviction under this rule is not admissible *if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction.* If more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, or if the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof out of the hearing of the jury so that the adverse party shall have a fair opportu-

nity to contest the use of such evidence." (Emphasis added.)

8. In 2006, this Court determined that for a defendant to preserve a claim of improper impeachment by prior criminal convictions under Rule 609, the defendant must have testified at trial. *See State v. Silvia*, 898 A.2d 707, 718, 720 (R.I.2006). Because this holding was deemed prospective in application, it does not control the result in this case. *Id.* at 718.

9. The defendant's criminal record is extensive. Between 1985 and 1986, he was charged and convicted of four counts of possession of a stolen motor vehicle. In 1991, he was charged and convicted of uttering and delivering forged United States Treasury checks. In 1994, he was charged and convicted of third-degree sexual assault stemming from his involvement with Darcy. Apparently, in 1989, defendant was also convicted of a misdemeanor offense of operating a motor vehicle on a suspended license.

probative value. Additionally, in *State v. Mattatall*, 603 A.2d 1098, 1117 (R.I.1992), this Court outlined factors that the trial justice must balance when determining whether to allow the state to impeach criminal defendants with their prior convictions. We held that the trial justice must look at the nature of the crimes, the remoteness of the convictions, and the defendant's disdain for the law as represented by the extent of his or her criminal record. *Id.*

"It is well settled that the decision regarding the admissibility of prior convictions to impeach the credibility of a witness is a discretionary matter for the trial justice." *State v. Morel*, 676 A.2d 1347, 1356–57 (R.I.1996) (citing *State v. Simpson*, 606 A.2d 677, 680 (R.I.1992)); *see also State v. Remy*, 910 A.2d 793, 796 (R.I.2006) (recognizing that the trial justice is vested with considerable discretion in this regard). This Court will reverse the trial justice's decision only upon finding that the trial justice abused his or her discretion. *State v. Rodriquez*, 731 A.2d 726, 731 (R.I.1999).

In the case at bar, it is clear from the record that the trial justice engaged in the appropriate Rule 609 analysis. He noted that "Mr. Vargas has a substantial record of arrests and convictions of various crimes over the past 20 years."[10] Indeed, Vargas's prior convictions included four charges of possession of a stolen motor vehicle, federal charges of uttering and delivering forged United States Treasury checks, and a charge of third-degree sexual assault stemming from his relationship with Darcy, when she was only fourteen years old. The trial justice denied defendant's motion *in limine* with respect to the convictions for possessing a stolen motor vehicle and uttering forged treasury checks, but granted the motion with respect to the third-degree sexual assault conviction:

> "I'm guided by Rule 609 of the Rules of Evidence * * * I think it's only fair in exercising my discretion that the state should have an opportunity to show that if [Vargas] decides to testify that he is not the law abiding citizen that he might wish to create an impression of * * *. [However, because] the prejudicial effect substantially outweighs the probative value of [the third-degree sexual assault] conviction, I'm inclined to grant the [m]otion in [l]imine with [respect to] that one particular conviction because it does relate directly to the nature of the charge that's before the Court today which is both first and second degree sexual assault."

We are satisfied that this ruling comports with Rule 609 and reflects an appropriate exercise of judicial discretion.

On appeal, defendant makes much of the fact that these convictions were more than ten years old at the time of trial. However, the passage of time is merely one factor that the trial justice must consider when making a Rule 609 decision. The fact that the convictions were more than ten years old is not determinative on the question of admissibility because of the nature and number of the crimes. *Cf. State v. Gillespie*, 960 A.2d 969, 981 (R.I. 2008) (affirming trial justice's decision to exclude witness's prior conviction of loitering for indecent purposes, as it was the only conviction in her record available to the jury, was not indicative of her credibili-

---

**10.** Defense counsel argues on appeal that the trial justice inappropriately relied on defendant's *arrests* and convictions when he undertook the Rule 609 balancing test. We are satisfied that although in making his Rule 609 determination the trial justice *referenced* defendant's arrests, he *relied* on defendant's convictions.

ty, and the record as a whole did not demonstrate her disdain for the law).

As we previously have declared, "conviction of the earliest crime, though committed many years before, as well as intervening convictions, should be admissible for impeachment purposes unless the trial justice determines that the prejudicial effect outweighs the probative value of the past conviction." *Mattatall*, 603 A.2d at 1117. In the case at bar, the trial justice determined that the probative value of defendant's previous convictions for possession of a stolen motor vehicle and check forgery, if admitted, would outweigh any prejudicial effect of this evidence. As the trial justice noted, both convictions speak to defendant's credibility; possession of a stolen motor vehicle and check forgery are crimes that involve dishonesty, such that the jury was entitled to consider these convictions when determining whether to believe defendant's testimony.

## II

### Cross–Examination

■ The defendant's second contention on appeal is that the trial justice erred when he allowed the state to cross-examine Estelle about her response, or lack thereof, to Vargas's relationship with her then-fifteen-year-old daughter, Darcy. According to Vargas, because the jurors learned of his sexual relationship with an underage child, they may have assumed that he had been charged and convicted of a prior sexual offense-third-degree sexual assault-the same offense that the trial justice had ordered excluded in his Rule 609 decision.

■ This Court accords considerable latitude to the rulings made by a trial justice during an examination of a witness. *Gomez*, 848 A.2d at 237. "We overturn such rulings 'only when there

has been an abuse of discretion or substantial injury to a defendant.'" *Id.* (quoting *State v. Boillard*, 789 A.2d 881, 886 (R.I.2002)). However, we are mindful that "[i]t is the *essence* of a fair trial that *reasonable latitude* be given [to] the cross-examiner * * * [which] include[s] an opportunity for a[n opposing party] to establish or reveal possible bias, prejudice, or ulterior motives as they may relate to the case being tried." *State v. Tiernan*, 941 A.2d 129, 134 (R.I.2008) (quoting *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980)).

In this case, Debra testified that she notified her grandmother about the first two molestations, and although Estelle assured Debra that she would handle the situation, she did nothing, and the abuse continued. Conversely, Estelle not only denied that Debra told her about the molestations, but also she insisted that if Debra had disclosed the assaults, "of course" she would have informed the authorities. The state then asked Estelle whether she had notified the police when she suspected that her own daughter, Darcy, was engaged in an illicit sexual relationship with defendant.

The defendant objected to this testimony, and at a bench conference he argued that the state was "attempting somehow to bring in the charges against [him] that * * * he had committed a third degree sexual assault," which the state was barred from using to impeach Vargas if he testified at trial. The prosecutor argued that Estelle's answer was relevant on the issue of her credibility because she boldly declared that "of course" she would have informed the authorities about Debra's allegations if she had known about them, yet she did not report her suspicions about her own daughter. The trial justice overruled the objection, and the witness admitted that she did not inform the authorities that

Vargas and Darcy were involved in a sexual relationship.

However, the jury was not informed that defendant had been convicted of third-degree sexual assault in connection with his relationship with Darcy. Furthermore, although the state was permitted to inquire into this incident to test Estelle's credibility, extrinsic evidence of Estelle's conduct with respect to her own daughter was not introduced. *See* Rule 608(b) of the Rhode Island Rules of Evidence (prohibiting the introduction of extrinsic evidence of specific instances of conduct of a witness for the purpose of attacking the witness's credibility).

It is our opinion that the trial justice did not abuse his discretion by allowing this cross-examination. The information about Darcy's relationship with defendant previously had been disclosed to the jury when the state's witnesses testified that Vargas was the father of Darcy's child and that the relationship began when Darcy was approximately fourteen years old. Rule 401 of the Rhode Island Rules of Evidence provides that "relevant evidence" is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, Estelle testified for the defense and adamantly declared that Debra did not tell her that defendant was abusing her; but she added that if she had known, she certainly would have reported Vargas. On cross-examination, however, she admitted that she failed to tell authorities about Vargas's relationship with her own young daughter. When

asked why she did not inform the police, Estelle replied, "I didn't think I had to. I don't know." This testimony clearly was relevant to Estelle's credibility, as well as Debra's. The defendant's second argument on appeal is denied.

### III

### Jury Instructions

The defendant's final appellate contention is that the trial justice erred by failing to properly advise the jury of the factual distinctions separating count 5 from count 6 of the indictment. Because each count charged defendant with second-degree child molestation, Vargas insists that the trial justice should have discussed the episodes of molestation with greater specificity and that his failure to do so may have led to confusion among the jurors. We reject this argument.

When this Court reviews a trial justice's charge to the jury,[11] we are mindful that "an erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Maglioli v. J.P. Noonan Transportation, Inc.*, 869 A.2d 71, 75 (R.I.2005) (quoting *Contois v. Town of West Warwick*, 865 A.2d 1019, 1022 (R.I.2004)). This review is *de novo. Imbruglia*, 913 A.2d at 1031.

In its second answer to defendant's request for a bill of particulars, the state set forth the four episodes of abuse. The third episode, detailed in count 5, was described as "the third time that the defendant molested her" and specified it consisted of "hand to penis contact." The fourth

11. General Laws 1956 § 8–2–38 governs the trial justice's responsibilities pertaining to jury instructions. The statute provides:

"In every case, civil and criminal, tried in the [S]uperior [C]ourt with a jury, the justice presiding shall instruct the jury in the law relating to the action, and may sum up the evidence therein to the jury whenever he or she may deem it advisable so to do; but any material misstatement of the testimony by him or her may be excepted to by the party aggrieved." *Id.*

episode, set forth in count 6, was described as "the fourth time that the defendant molested her * * * the last time that the defendant molested the victim[,]" and specified it consisted of "hand to penis contact." The record discloses that Debra testified that Vargas molested her on four separate occasions; she testified in detail that the last two incidents occurred in the bathroom and involved her rubbing defendant's penis; she did not allege that defendant made her perform that particular sexual act at any other time or that any other assaults occurred in the bathroom. During his instructions, the trial justice reviewed the counts in the indictment, including the four occasions in their chronological sequence. With regard to counts 5 and 6, he explained that the incidents consisted of "hand-to-penile contact."

At the end of the instructions, defendant objected to the charge and argued that the trial justice should instruct the jury in a manner that better differentiated between counts 5 and 6, because the indictment listed counts 5 and 6 only as "hand/penile contact," and the second answer to defendant's request for a bill of particulars specified that the counts pertained to the third and fourth episodes. The trial justice declined to modify his instruction because the proffered comments probably would confuse the jurors.

Although it would have been preferable for the trial justice to explain to the jury that it must be satisfied beyond a reasonable doubt that there were two separate incidents of sexual abuse, as reflected in counts 5 and 6, we do not deem his failure to do so to be error. After reviewing the record, including the jury instructions in their entirety, we see no evidence of juror confusion. Debra's testimony, as well as the trial justice's instructions, were clear; only the third and fourth occasions involved hand-to-penile contact, and only two

counts in the indictment specified hand-to-penile contact. Furthermore, the defendant was found guilty of all counts in the indictment. There is no suggestion on the record before us that the jury was confused or needed further clarification. *Cf. State v. Prefontaine*, 667 A.2d 531, 532 (R.I.1995) (recognizing that the jurors were "hopelessly confused about what exact offenses had been committed" when they sent the trial justice a note asking for clarification and then found the defendant guilty of two counts of second-degree child molestation, but not guilty of two other identical counts). Accordingly, we reject this contention.

### Conclusion

For the foregoing reasons, we affirm the judgment and direct that the record may be remanded to the Superior Court.