STATE

v.

José ANGELES.

No. 2015–42–M.P.
(P2/12–617A)

Supreme Court of Rhode Island.

April 3, 2017

For State: Aaron L. Weisman, Department of the Attorney General

For Defendant: Catherine Gibran, Office of the Public Defender

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## OPINION

Justice Flaherty, for the Court.

When giving his instructions to the jury at the conclusion of the parties' final arguments, the trial justice referred to a suppression hearing that had occurred before trial, and he instructed the jury that the question of whether the police lawfully seized cocaine from José Angeles, the defendant, was a legal issue that he would decide. After a jury convicted the defendant of two counts of felony assault and one count each of possession of a controlled substance, resisting arrest, and reckless driving, the defendant petitioned this Court for a writ of certiorari, arguing that the trial justice's jury instructions constituted reversible error because the instructions amounted to commenting on the evidence and were "confusing, misleading, unnecessary and bolstering."[1]

The matter came before this Court for oral argument on February 23, 2017, pursuant to an order directing the parties to appear and show cause why this appeal should not summarily be decided. After considering the parties' oral and written arguments, and after thoroughly reviewing the record, it is our opinion that cause has not been shown and that this case should be decided at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of conviction.

## Facts and Travel

On the evening of July 6, 2011, Sgt. Gregory Sion, a supervisor in the Providence Police Department's narcotics unit, was operating an unmarked car on patrol in the north end of the city. As Sgt. Sion was traveling east on Ledge Street, he "observed two vehicles approaching [him] at a high rate of speed." One of those vehicles was a silver SUV bearing Massachusetts license plates, and the other vehicle had New York license plates. It appeared to Sgt. Sion that the silver SUV was chasing the vehicle with New York plates and, as the two vehicles approached him, the silver SUV veered across the center of the road and into Sgt. Sion's lane of travel. Sergeant Sion said that, to avoid a collision, he "had to swerve to the right to get out of [the silver SUV's] way," causing the right-front wheel of the police vehicle to go up onto the sidewalk. In response, Sgt. Sion quickly executed a U-turn in an attempt to follow the two vehicles. He said that he initially lost sight of both vehicles but, with the aid of a passerby who was walking his dog, he quickly located the vehicles near 33 Marietta Street. By the time Sgt. Sion came upon the vehicles, both were unoccupied.

Using his police radio, Sgt. Sion alerted the six other members of his narcotics squad about the incident that had occurred on Ledge Street, which he described as "a road rage type of incident." While Sgt. Sion had been driving around the block to see if he could locate the drivers of the two vehicles, Det. John Bento and his partner Det. Leo Pichs, both of the Providence Police Department's narcotics unit, drove to Marietta Street and parked their unmarked police vehicle approximately halfway down the street, facing towards Charles Street. Shortly after arriving at Marietta Street, Det. Bento saw the silver SUV "pull out of the parking lot of 33 Marietta" and come towards him. Detective Bento alerted Sgt. Sion that the silver SUV had pulled out onto Marietta Street.

Soon, Sgt. Sion positioned his car behind the silver SUV, and Detectives Bento and Pichs were in front of the car. Sergeant

---

1. The defendant, having failed to file an appeal within the period allowed, petitioned this Court for a writ of certiorari, and we granted the petition.

Sion observed a lone male driver in the silver SUV, who appeared to be the same person who was driving the car when it ran Sgt. Sion off the road. He then ordered Detectives Bento and Pichs "to move in." Detectives Bento and Pichs got out of their vehicle and approached the driver of the silver SUV, which was being driven by defendant, José Angeles.

There is conflicting testimony about what happened after the police "boxed in" the silver SUV. According to the testimony of Sgt. Sion and Det. Bento, the emergency lights on Det. Bento's vehicle were activated, and Detectives Bento and Pichs, who were in plainclothes, verbally identified themselves as police officers, and Det. Pichs' badge was clearly visible. Several eyewitnesses, however, testified that the police did not turn on their emergency lights nor did they identify themselves as they approached the silver SUV. And two of the eyewitnesses testified that they believed that defendant was getting "jumped" by random people.

Detective Bento testified that, as he walked toward the silver SUV, he observed defendant "manipulate something in his hand and put it under his leg." Then, defendant put the silver SUV into reverse, striking Sgt. Sion's vehicle, and proceeded to drive back and forth, ramming into both Det. Bento's vehicle and Sgt. Sion's vehicle repeatedly until he had enough room to escape. The defendant drove the silver SUV onto the sidewalk towards Det. Bento, at which point Sgt. Sion drew his service pistol and at "point blank range shot the left rear tire of the vehicle in hopes that it would somehow disable the vehicle from running down [Det.] Bento." However-

er, Det. Bento was struck[2] and defendant fled the scene. A high speed chase ensued.

The chase soon ended after defendant crashed into a parked car and lost control of the SUV, which went down a driveway, and ultimately through a yard and into a fence. The defendant fled on foot, but the police quickly apprehended him. Officer Andres Perez, who at the time of this incident was a detective in the Providence Police Department's narcotics unit, participated in the pursuit and capture of defendant. After defendant was taken into custody, Officer Perez returned to the abandoned SUV to see "if there was any evidence left there." As it turned out, Officer Perez "seized [from the driver's side floor] a clear plastic bag, and that clear plastic bag contained nine individually wrapped bags of suspected crack cocaine."

The state filed a criminal information, charging defendant with the offenses enumerated earlier in this opinion. Before trial, defendant filed a motion to suppress the seized bag of cocaine, alleging that the police lacked probable cause to stop his vehicle or to arrest him, and that the cocaine had been seized illegally. After a hearing on the issue, the trial justice denied defendant's motion.[3]

During defendant's jury trial, several references were made, especially during defendant's cross-examination of the police witnesses, about whether the cocaine that Officer Perez seized from the silver SUV had been in plain view, and whether the police had probable cause or a warrant allowing them to search the vehicle. There was also testimony that a suppression hearing had occurred several weeks before trial. When the trial justice imparted his

---

**2.** Detective Bento suffered minor injuries, including abrasions and "some bumps and bruises."

**3.** At trial, defendant stipulated to admission of the cocaine and the accompanying toxicology report.

instructions to the jury, he included the following:

"Now, let me say at the outset, ladies and gentlemen, there was testimony about the legality if you would of the seizure of the cocaine from the silver SUV by the Patrolman Perez. Now, that is not an issue before you. You do not have to determine and cannot determine the legality of the seizure of this particular evidence. That is, as I just said, that is a legal issue and something that I decide. Not you. So I don't want you to be confused by the use of some terms here such as probable cause, plain view, and abandoned. That's not something that you have to sort out or decide, and frankly, when reference was made to a hearing that occurred about six weeks or almost two months ago, that was a hearing held before me to decide those particular issues, specifically the legality of the search and the seizure of that particular evidence, so that is not something for you to consider or for you to decide. You can consider the testimony on the issues of the witnesses' credibility, but not—there's no legal determination that you have to make as to the legality of that so-called search and seizure."

## Standard of Review

■ "When we are called upon to review 'issues pertaining to jury instructions, we do so de novo.'" State v. Pona, 66 A.3d 454, 470 (R.I. 2013) (quoting State v. Vargas, 991 A.2d 1056, 1060 (R.I. 2010)). "In conducting this task, we remain mindful that the trial justice's jury 'instructions need only adequately cover [ ] the law.'" Id. (quoting State v. Sivo, 809 A.2d 481, 488 (R.I. 2002)). Moreover, "[w]hen this Court reviews jury instructions, it seeks to determine how a 'jury of ordinary intelligent lay people would have understood them.'" State v. Imbruglia, 913 A.2d 1022, 1031 (R.I. 2007) (quoting State v. John, 881

A.2d 920, 929 (R.I. 2005)). "In doing so, we do not isolate a challenged portion from the instructions as a whole, but rather we scrutinize the challenged portion in the context of the entire charge." Id. "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Saber v. Dan Angelone Chevrolet, Inc., 811 A.2d 644, 653 (R.I. 2002) (quoting Patino v. Suchnik, 770 A.2d 861, 866 (R.I. 2001)).

## Analysis

■ Before this Court, defendant accepts that the trial justice was correct to "remind[ ] the jurors that they were the factfinders and * * * that they may not determine the legality of the drug's seizure." The defendant argues, however, that the trial justice went "beyond those simple admonishments and * * * commented on the testimony adduced regarding the seizure of the evidence." Without identifying any specific language that the trial justice employed, he insists that the trial justice communicated to the jurors that "he had already made a decision about the drugs, which was obviously in the state's favor." Moreover, defendant contends that this led the jury to "conclude that the trial justice believed the state's witnesses' testimony about the drugs."

The state, for its part, maintains that the challenged jury instruction was proper and "merely and correctly admonished, in language not in any way confusing or misleading, that it was not the jury's responsibility to determine the legality of the seizure of the cocaine from [defendant's] vehicle[.]" The state, at oral argument, asserted that the trial justice referred to the suppression hearing in his jury instructions only to give context to his instructions as a whole.

■ Despite defendant's contention that the trial justice "told the jurors that he had already decided the legality of the search and seizure[,]" we perceive no language in the challenged instruction that supports that conclusion. The trial justice did not err when he told the jury that "when reference was made to a hearing that occurred about six weeks or almost two months ago, that was a hearing held before me to decide those particular issues * * *." Even if his choice of words was somewhat inartful, the trial justice did not disclose how, or even if, he had decided the issue. The defendant, however, would have us believe that this comment would lead a juror to conclude that the trial justice had ruled in favor of the state because evidence of the seizure was admitted, and then that juror would make the additional leap to believe that, because the trial justice sided with the state on that evidentiary issue, the trial justice must also be siding with the state on other issues. We do not accept that argument. Trial justices make evidentiary decisions many times throughout the course of a trial, and the mere fact that a trial justice admits or excludes a piece of evidence is simply not a ground to believe that the trial justice is then biased towards one party over another.

We hold that the trial justice's jury instructions were acceptable. Indeed, the challenged portion of the jury instructions is but one paragraph amid twenty-three pages of transcript that make up the jury instructions in this case. When we consider the challenged paragraph within the context of the entire instruction, as we must, we see nothing that would be difficult for a person of ordinary intelligence to understand. Moreover, there is an absence of anything that would indicate that the trial justice commented on the evidence or in any other way confused or misled the jury.

**Conclusion**

For the reasons set forth herein, we quash the writ previously issued and affirm the judgment of the Superior Court. We remand this case to that tribunal with our decision endorsed thereon.