December 11, 2018

**Supreme Court**

No. 2017-90-C.A.

(K2/15-289A)

State                                    :

v.                                       :

Bruce MacNeil.                           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                :

v.                :

Bruce MacNeil.         :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**   The defendant, Bruce MacNeil, appeals from a January 23, 2017 judgment of conviction in Kent County Superior Court on one count of second-degree sexual assault in violation of G.L. 1956 §§ 11-37-4 and 11-37-5, after a jury found him guilty of having sexually assaulted a fifteen-year-old neighbor.  He was sentenced to a term of ten years at the Adult Correctional Institutions, with two years to serve and the balance suspended with probation.  On appeal, the defendant contends that he is entitled to a new trial because the trial justice committed what the defendant submits were three evidentiary errors—two of which relate to the admissibility of certain testimony, and one of which relates to the trial justice's having allowed a specific line of questioning by the prosecution as to whether the defendant's wife had contacted the alleged victim or his family.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further

briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On May 1, 2015, the state filed a criminal information charging defendant with one count of second-degree sexual assault in violation of §§ 11-37-4 and 11-37-5.  In due course, a jury trial was held in Kent County Superior Court over three days from October 17 through October 19, 2016.  We summarize below the salient aspects of what transpired at that trial.

## A

## The Testimony of the Complaining Witness

The complaining witness, Jacob,[1] testified that, on February 2, 2015, he and his mother were driving home when they saw defendant, their neighbor, shoveling snow in his driveway.  Jacob stated that he got out of the car to assist his neighbor in clearing the snow.  Having been neighbors for a few months, Jacob and defendant knew each other.  Jacob was then fifteen years old, and defendant was in his mid-seventies.  It was further Jacob's testimony that, after the two finished shoveling the snow, they both entered the shed located in defendant's backyard so that Jacob could return the shovel which he had been using.  According to Jacob, once they were both inside the shed, defendant shook Jacob's hand and then "pulled [him] into a * * * two-handed hug * * * and kissed" his cheek.  Jacob testified that defendant then asked "if he was moving too fast" and that, when Jacob said no, defendant told him that "he knew how [they] felt about each other."  Jacob further testified that he had said no when defendant asked "if he was moving too

---

[1]    In order to respect the privacy of the complaining witness and that of his family, we refer to the complaining witness pseudonymously as "Jacob."

fast" because defendant had "recently" told Jacob that "his son had died and [Jacob] reminded him of his son, so [Jacob] thought he kissed [him] seeing [him] as a son figure."

Jacob proceeded to testify that defendant then "cupped [Jacob's] penis with his hand" over Jacob's jeans for five to seven seconds. According to Jacob, as defendant was acting in that manner, defendant asked if it felt good, to which Jacob responded in the negative. After the two of them left the shed, defendant asked for Jacob's cell phone number, which Jacob gave him. Jacob testified that he then returned home, told his parents what had happened, and they went to the police station to give a statement.

During his cross-examination of Jacob, defense counsel asked him: "Now, did you seek professional help for any reaction that you might have had?" The prosecutor objected, the trial justice sustained the objection, and defense counsel immediately requested a sidebar, which was granted. At sidebar, the trial justice asked defense counsel: "How is that relevant to the elements?" Defense counsel responded:

> "Part of the discovery was whether he had gone for counseling and I was provided the name of a counselor that he went too [*sic*]. I got my notes, like one page. I just wanted to make sure I have all the correct information. It's important whether he was telling the truth and whether he gave the correct information to the prosecutor. I just wanted the name."

The trial justice then asked defense counsel: "Do you want to ask him questions before the jury to make sure there's [*sic*] no other medical providers[?]" Defense counsel responded: "I want to make sure there is no other person that he saw for counseling. That's all. I believe they asked him and his family." In response, the trial justice said: "That was something under the rules you

could have even compelled at deposition if you wanted to under the criminal rule. The Court will not allow that to play out in front of the jury."[2]

## B

### The Testimony of Defendant

The defendant testified that, while he and Jacob were in the shed, defendant "gave him a hug" with "[j]ust [his] left arm" because elevating his right arm "hurt so much from days of shoveling that it was hard to pick it up." He further testified that his right hand "must have totally by accident brushed against [Jacob]." Also, referring to the hug, he testified that he asked Jacob if he liked it. He testified that he did not kiss Jacob on the cheek or ask him if he was moving too fast.

## C

### The Testimony of Defendant's Wife

In her testimony, defendant's wife, Johanna MacNeil, indicated that, at her husband's request, she had given him money to pay Jacob for having assisted with the snow shoveling and that she told her husband to ask Jacob for his phone number in case they might need help again. In the course of his cross-examination of Mrs. MacNeil, the prosecutor asked her if she ever tried to go to speak to Jacob or his parents after February 2, 2015. She responded that she had not

---

[2] In the course of pretrial discovery, defense counsel had, on March 28, 2016, filed a motion seeking to compel the prosecution to provide the name and address of the counselor whom the prosecution previously disclosed Jacob had seen. Defense counsel sought this information through the motion to compel because, when the state had previously provided the requested information to defendant, "the name and address of the counselor that the alleged victim has seen as noted" was "illegible." The state complied with the motion to compel on April 11, 2016. On April 18, 2016, the trial justice additionally granted defense counsel's oral motion to issue a subpoena to that counselor and ordered that the counseling records be returnable on April 27, 2016 for an *in camera* review by the court. However, the record indicates that defense counsel did not pursue the matter further before trial, which began six months later.

done so and that the MacNeils had been "told not to have any contact" with Jacob and that she "assumed [they] were not allowed to" talk to his parents. The prosecutor then asked: "You live across from an elementary school; correct?" Mrs. MacNeil responded, "On the side." Defense counsel then objected on relevance grounds, and the trial justice overruled the objection, noting that the fact of the proximity of the elementary school was already in evidence.[3]

## D

### The Verdict

On October 19, 2016, the jury returned a guilty verdict, and Mr. MacNeil filed a timely notice of appeal.

## II

### Standard of Review

This Court accords great "latitude to a trial justice's rulings made during examination of witnesses at trial." *State v. Vargas*, 991 A.2d 1056, 1060 (R.I. 2010) (internal quotation marks omitted). We will "overturn such rulings only when there has been an abuse of discretion or substantial injury to a defendant." *Id.* at 1062 (internal quotation marks omitted). The scope of cross-examination is subject to the exercise of the trial justice's sound discretion. *State v. Anthony*, 422 A.2d 921, 924 (R.I. 1980); *see also State v. Husband*, 162 A.3d 646, 655 (R.I. 2017) ("[I]t is well settled that [this Court] review[s] a trial justice's decision admitting or excluding evidence under an abuse of discretion standard.") (internal quotation marks omitted). However, "the exercise of this discretion must not unduly restrict a defendant's right to cross-examine. It is the essence of a fair trial that reasonable latitude be given the cross-examiner."

---

[3] In the course of his testimony on the first day of the trial, Jacob indicated that there was an "[e]lementary school about a house away from him" in response to a question asking him to describe defendant's neighborhood.

*Anthony*, 422 A.2d at 924. As we noted in *State v. Lomba*, 37 A.3d 615 (R.I. 2012), "[a] trial justice's exercise of discretion to limit the scope of cross-examination is not reviewable except for clear abuse, and only if it constitutes prejudicial error." *Lomba*, 37 A.3d at 621 (internal quotation marks omitted).

## III

## Analysis

The defendant raises three arguments on appeal—*viz.*, that the trial justice erred: (1) in sustaining the prosecutor's objection to defense counsel's question to Jacob as to whether he had sought "professional help for any reaction" that he may have had to the events at issue in this case; (2) in not striking Mrs. MacNeil's response to the prosecutor's questions about contacting Jacob or his family; and (3) in overruling the defense's objection to Mrs. MacNeil's testimony that she and defendant lived on the side of an elementary school. We address each argument in turn.

## A

## Defense Counsel's Cross-Examination of Jacob

The defendant argues that the trial justice erred in sustaining the prosecutor's objection to defense counsel's question to Jacob as to whether he sought professional help after the events at issue in this case. The relevant portion of the trial transcript reads as follows:

> "[DEFENSE COUNSEL:] Now, did you seek professional help for any reaction that you might have had?
>
> "[COUNSEL FOR THE STATE]: Objection, Judge.
>
> "THE COURT: Sustained.
>
> "[DEFENSE COUNSEL]: May we approach, Judge?
>
> "THE COURT: Absolutely. With the court reporter.

"(The following sidebar was held:)

"THE COURT: How is that relevant to the elements?

"[DEFENSE COUNSEL]: Part of the discovery was whether he had gone for counseling and I was provided the name of a counselor that he went too [*sic*]. I got my notes, like one page. I just wanted to make sure I have all the correct information. It's important whether he was telling the truth and whether he gave the correct information to the prosecutor. I just wanted the name.

"THE COURT: Counsel.

"[COUNSEL FOR THE STATE]: There is no good-faith basis at this point. It's pure speculation. We turned the information over.

"THE COURT: Do you want to ask him questions before the jury to make sure there's no other medical providers[?]

"[DEFENSE COUNSEL]: I want to make sure there is no other person that he saw for counseling. That's all. I believe they asked him and his family.

"THE COURT: *That was something under the rules you could have even compelled at deposition if you wanted to* under the criminal rule. The Court will not allow that to play out in front of the jury.

"(The sidebar was concluded.)" (Emphasis added.)

The defendant now asserts that the trial justice improperly sustained the state's objection under the Superior Court Rules of Criminal Procedure and that the error was unduly prejudicial. He argues that his attorney posed the question in order to challenge Jacob's credibility and that the trial justice's ruling was incorrectly based on the trial justice's view that counsel could have obtained that information by taking a deposition of Jacob. We note initially that defendant is correct in contending that the trial justice erred in stating that defense counsel could have taken a

- 7 -

deposition of Jacob before trial.[4]  However, after careful review of the record, we have determined that this error was not prejudicial.

We have stated that "[i]nquiries that are potentially misleading or irrelevant, that offer little or no probative value, or that exceed the scope of the direct examination are objectionable, and may be restricted by the trial justice." *State v. Porter*, 179 A.3d 1218, 1228-29 (R.I. 2018) (internal quotation marks omitted).  In *Porter*, this Court affirmed a trial justice's decision to limit the scope of cross-examination during a trial for second-degree murder when "defendant could not point to even a scintilla of evidence" that there was a possibility of an unknown second assailant and weapon.  *Porter*, 179 A.3d at 1229; *see State v. Alston*, 47 A.3d 234, 249 (R.I. 2012) (holding that "when the state objected to defendant's question, defendant did not make any offer of proof that the examination he intended to embark upon could lead to relevant evidence" and that, therefore, the trial justice did not commit prejudicial error in limiting defendant's cross-examination of a witness); *see also State v. Brown*, 709 A.2d 465, 474 (R.I. 1998).

In the instant case, defense counsel acknowledged at sidebar that he had received from the state before trial the name of one counselor from whom Jacob had sought treatment and stated that he "just wanted to make sure [he had] all the correct information * * *.  [He] just wanted the name."  Defense counsel further stated that he "want[ed] to make sure there [was] no other person that he saw for counseling.  That's all."  There is no indication, either in the record or in defendant's presentation before this Court, that the state improperly withheld from defense counsel the names of any additional counselors from whom Jacob may have sought treatment, or

---

[4]    A deposition would not have been appropriate because there had been no indication that Jacob would be unavailable to testify at trial.  *See* Super. R. Crim. P. 15.  However, defendant could have sought to compel further *discovery* before trial regarding additional counseling Jacob may have sought if he believed that the state had withheld pertinent evidence.  *See* Super. R. Crim. P. 16.

that Jacob withheld the names of any such counselors from the state. Allowing defense counsel to question Jacob in this manner would have constituted an inquiry that was irrelevant and offered little probative value. *See Porter*, 179 A.3d at 1228-29. Therefore, the trial justice's ruling is not reversible; he did not allow further investigation to occur in the middle of a cross-examination, a decision entirely within his discretion. *See State v. Lynch*, 770 A.2d 840, 847 (R.I. 2001) (stating that "this Court can affirm the judgment of the Superior Court on grounds not actually relied upon by the trial court to justify its ruling"); *cf. Chiaradio v. Falck*, 794 A.2d 494, 497 (R.I. 2002) (holding in a civil case that "[t]he trial justice should have rebuffed the defendant's midtrial attempt to resume discovery"). Accordingly, we perceive no reversible error in the trial justice's evidentiary ruling regarding defense counsel's questioning of Jacob with respect to professional counseling he may have received.

**B**

**Mrs. MacNeil's Testimony Regarding Not Contacting the Victim or His Parents**

The defendant also argues on appeal that the trial justice erred in allowing the prosecutor to ask Mrs. MacNeil: "[A]fter this incident occurred * * * did you ever go down to talk to [Jacob]? * * * Did you go down to find out what had happened? * * * Did you talk to his parents?" The defendant contends that those questions were "totally irrelevant to the issue of the defendant's guilt," citing Rule 401 of the Rhode Island Rules of Evidence; and he further argues that the questions "gave rise to an inference of [d]efendant's guilt."

This Court need not address either of those arguments, because defense counsel did not timely object to this line of questioning at trial. *See State v. Pona*, 66 A.3d 454, 468-69 (R.I. 2013). In *Pona*, this Court held that "[a]ccording to our well settled raise or waive rule, if an

issue was not preserved by *specific* objection at trial, then it may not be considered on appeal."

*Pona*, 66 A.3d at 468 (emphasis in original) (internal quotation marks omitted).

The prosecutor asked Mrs. MacNeil three questions about contacting the victim and his parents, and Mrs. MacNeil answered each one with no objection by the defense:

> "[COUNSEL FOR THE STATE:] * * * So after this incident occurred on February 2nd * * * did you ever go down to talk to [Jacob]?
>
> "[MRS. MACNEIL:] No, I did not.
>
> "[COUNSEL FOR THE STATE:] Did you go down to find out what had happened?
>
> "[MRS. MACNEIL:] No, I did not. We were told not to have any contact.
>
> "[COUNSEL FOR THE STATE:] That's fine. Did you talk to his parents?
>
> "[MRS. MACNEIL:] No, I did not. I assumed we were not allowed to.
>
> "[COUNSEL FOR THE STATE:] Okay. You live across from an elementary school, correct?
>
> "[MRS. MACNEIL:] On the side.
>
> "[DEFENSE COUNSEL]: Objection, relevance."

It was not until *after* the prosecutor asked Mrs. MacNeil about living across from an elementary school that defense counsel objected. Because he did not timely object to the questions as to whether she had attempted to contact Jacob or his parents at trial, defendant may not raise an objection to them now on appeal.[5] *See Pona*, 66 A.3d at 468, 469; *State v. Bido*, 941 A.2d 822,

---

[5] It is true that there is a narrow exception to the "raise-or-waive" rule where the alleged error is "more than harmless, and the exception * * * implicate[s] an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to

- 10 -

828-29 (R.I. 2008); *see also DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 628-29, 629 n.55 (R.I. 2011).

C

**Mrs. MacNeil's Testimony Regarding the Nearby Elementary School**

Lastly, defendant contends that the trial justice erred when he did not strike Mrs. MacNeil's testimony that she and defendant lived near an elementary school; according to defendant, that statement allowed for an improper inference of guilt. This issue is also waived; in *In re Jazlyn P.*, 31 A.3d 1273 (R.I. 2011), we held that, "if the introduction of evidence is objected to for a specific reason, other grounds for objection are waived and may not be raised for the first time on appeal." *In re Jazlyn P.*, 31 A.3d at 1280-81 (internal quotation marks omitted). As noted above, at trial, the prosecutor asked Mr. MacNeil's wife: "You live across from an elementary school; correct?" Mrs. MacNeil responded: "On the side." Defense counsel objected: "Objection, relevance." The trial justice overruled the objection, stating: "It's already in evidence. The answer will stand." At trial, defendant raised a relevance objection to the testimony, and the trial justice overruled it. He may not now raise an objection based on improper inference.

In addition, the testimony that defendant and his wife lived near an elementary school had already been admitted into evidence without objection before Mrs. MacNeil testified to that fact;[6] therefore, the objection is unavailing. *See State v. Brown*, 9 A.3d 1240, 1245 (R.I. 2010) (holding that defense counsel's later objection to testimony already in evidence was untimely

---

counsel at the time of trial." *State v. Breen*, 767 A.2d 50, 57 (R.I. 2001). The instant case does not fall within the parameters of that exception.

[6]     During Jacob's testimony on the first day of trial, when he was asked to describe the neighborhood in which he and defendant both lived, he stated that there was an elementary school "about a house away from him." *See* footnote 3, *supra*.

and therefore waived).  At that point, defense counsel raised no objection.  Therefore, the trial justice's decision to overrule the objection during Mrs. MacNeil's testimony three days later to the same fact was proper because that fact was already in evidence and had not been previously objected to.

Accordingly, we perceive no error on the part of the trial justice.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court.  We remand the record to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Bruce MacNeil. |
| **Case Number** | No. 2017-90-C.A. (K2/15-289A) |
| **Date Opinion Filed** | December 11, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State:<br><br>Christopher R. Bush<br>Department of Attorney General |
| | For Defendant:<br><br>Edward M. Pepe, Esq. |